UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 25 Cr. 592 (LAK)

GÖKCE GÜVEN,

Plea

Defendant.

------------------------------x

New York, N.Y.
May 15, 2026
12:15 p.m.

Before:

HON. SARAH NETBURN,

U.S. Magistrate Judge

APPEARANCES

JAY CLAYTON
United States Attorney for the
Southern District of New York
BY: ALEXANDRA ROTHMAN
ALLISON C. NICHOLS
Assistant United States Attorneys

QUINN EMANUEL URQUHART & SULLIVAN LLP
Attorneys for Defendant
BY: SCOTT HARTMAN
-AND-
CLEMENT & MURPHY, PLLC
BY: DANIELLE R. SASSOON

Also Present:

Daniel Gabel, U.S. Postal Inspection Service
Connor O'Shea, Federal Bureau of Investigation

(Case called)

MS. ROTHMAN: Good afternoon, your Honor. Alexandra Rothman and Allison Nichols for the United States, and we are joined at counsel table by Dan Gabel of the U.S. Postal Inspection Service and Connor O'Shea of the FBI.

THE COURT: Thank you, everybody.

MR. HARTMAN: Good afternoon, your Honor. Scott Hartman and Danielle Sassoon for the defendant, Ms. Güven.

THE COURT: Thank you.

MR. HARTMAN: Your Honor, if I could, can I just put on the record that Ms. Güven is joined by a number of relatives and friends?

THE COURT: Of course.

MR. HARTMAN: Today with us in court are Ms. Güven's grandmother, Birsen Baybogan, who traveled here from Turkey, and her mother, Fadime Baybogan, who also traveled from Turkey. Her sister, Gonca Guven, is here, and then a number of friends, Nazli Gungor, Anika Valenzuela, Frazier Horn, and Baran Korkmaz, are all here to support her.

THE COURT: Thank you all for being here. I appreciate it, as, I'm sure, does Ms. Güven, so I appreciate that. I see that Ms. Güven has been charged on information.

Has she waived indictment yet?

MR. HARTMAN: She hasn't, your Honor.

THE COURT: Has or has not?

MR. HARTMAN: Has not.

THE COURT: Thank you.

Ms. Güven, the document that contains the charges against you is called an "information," and it has been issued by the United States Attorney. Under the Constitution, you have the right to be charged by an indictment issued by the grand jury instead of by an information like this.

The grand jury is a group of 23 ordinary citizens that are called to jury service to hear the government's evidence in criminal cases and decide whether the evidence is sufficient to justify bringing you to trial. In order to return an indictment, at least 12 of the Grand Jurors most vote for the indictment, finding that there is probable cause to believe that an offense was committed and that you committed it.

You have a right to have these charges considered by the grand jury, which means that without your consent, these charges cannot even be brought unless approved by the grand jury. But if you waive indictment by the Grand Jury, the case will proceed against you based on United States Attorney's information just as if you have been indicted.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you can just move the microphone closer to you, you will be speaking a lot. Thank you. A few moments ago, you were shown a copy of this waiver indictment form that

you signed.

Did you review this form with your attorney before you signed it?

THE DEFENDANT: Yes.

THE COURT: And do you understand that by signing this form, you are giving up your right to have your case considered by the grand jury and are agreeing instead to have the charges filed by the United States Attorney; is that correct?

THE DEFENDANT: Yes.

THE COURT: Have you discussed with your attorney the advantages and disadvantages of waiving indictment?

THE DEFENDANT: Yes.

THE COURT: Have any threats or promises been made to you to get you to waive indictment?

THE DEFENDANT: No.

THE COURT: Let me confirm. Do you wish to give up your right to be charged by the grand jury?

THE DEFENDANT: Yes.

THE COURT: OK. Thank you. In addition, I have before me a consent to proceed before a United States Magistrate Judge, another form that you have signed. What this form says is that, knowing that you have the right to have this plea taken by a United States District Judge, you are agreeing instead to have this plea taken by me, a United States Magistrate Judge.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Before you signed this form, did your lawyer explain it to you?

THE DEFENDANT: Yeah.

THE COURT: OK. It is accepted.

Ms. Güven, you have been charged in a one-count information. Count One charges you with securities fraud, which is a violation of Title 15 of the United States Code, Sections 77q(a) and 77x. Actually, I am going arraign you first. I apologize. Let me explain this for a moment.

We are going to go through two quick steps. The first is I'm going to arraign you, which is to explain the charge to you and ask you to enter a plea. Typically, people enter a not guilty plea at the arraignment phase. I understand that you are here for the purposes of entering a guilty plea, but to make sure all of your rights are protected, I am going to ask you to enter a plea in the arraignment phase, which, again, would typically be a not guilty plea, and then we'll proceed to the plea proceeding, where you may, if you continue to decide to do so, change your plea and enter a plea of guilty.

Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: Do you need any time to speak to your lawyer?

THE DEFENDANT: I think that makes sense. Yes.

THE COURT: As I was saying, you have been charged in a one-count information for securities fraud.

Have you received a copy of the information?

THE DEFENDANT: Yes.

THE COURT: And have you had a chance to review it and discuss it with your lawyer?

THE DEFENDANT: Yeah.

THE COURT: You have the right to have me read it to you in open court if you would like, but you can waive that right.

Would you like me to read it to you?

THE DEFENDANT: I have read the document. I waive that right.

THE COURT: OK. For purposes of the arraignment, this initial part, how do you plead?

THE DEFENDANT: Yes, I am pleading -- I'm pleading not guilty.

THE COURT: OK. I know it's a little confusing. It's to make sure your rights are protected. I am entering the plea of not guilty for the arraignment part of this proceeding.

THE DEFENDANT: Yes.

THE COURT: Now we are going to switch to the plea proceeding --

THE DEFENDANT: OK.

THE COURT: -- where I understand you intend to change your plea and enter a plea of guilty; correct?

THE DEFENDANT: Yes.

THE COURT: Do you want to take a minute?

THE DEFENDANT: I'm sorry. We can move forward.

THE COURT: All right. Ms. Güven, so as I stated, I understand that you wish to change your plea and enter a plea of guilty to this charge; is that correct?

THE DEFENDANT: Yes.

THE COURT: Before deciding whether to accept your guilty plea, I am going to ask you certain questions. It's very important that you answer these questions honestly and completely. The purpose of these proceedings is to make sure that you understand your rights, to decide whether you are pleading guilty of your own free will, and to make sure that you are pleading guilty because you are guilty and not for some other reason.

Do you understand what I am saying.

THE DEFENDANT: Yes, I understand.

THE COURT: OK. If at any point in time you don't understand my questions or you want an opportunity to speak with your lawyers, please say so, because it's important that you understand every question before you answer it.

Will you do that?

THE DEFENDANT: Yes, thank you.

THE COURT: OK. Ms. Shaw, will you please swear in Ms. Güven?

(Defendant sworn)

THE COURT: Do you understand, Ms. Güven, that you are now under oath, and if you answer any of my questions falsely, you can be charged with perjury?

THE DEFENDANT: Yes.

THE COURT: Are you a United States citizen?

THE DEFENDANT: No.

THE COURT: Do you understand that as a result of your guilty plea, your removal is very likely and, in fact, mandatory pursuant to the terms of this plea?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that, in addition, you could be denied citizenship in the future or denied admission to the United States as a result of your conviction?

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: OK. Have you had an opportunity to discuss the possible immigration consequences of your plea with your lawyers?

THE DEFENDANT: Yeah, I did.

THE COURT: And do you understand that you will be bound by your guilty plea regardless of these immigration

consequences and regardless of any advice you may have received from your lawyers or from others?

Do you understand all of that?

THE DEFENDANT: Yeah, I understand.

THE COURT: OK. How old are you?

THE DEFENDANT: I am 26 years old.

THE COURT: And how far did you go in school.

THE DEFENDANT: I graduated from undergrad from UC Berkeley.

THE COURT: And I understand you speak English.

I take it you also read English; is that correct?

THE DEFENDANT: Yes.

THE COURT: OK. Are you currently or have you recently been under the care of a doctor or psychiatrist for any reason?

THE DEFENDANT: I see a psychiatrist, but I am not under a care or a prescription.

THE COURT: OK. I'm not going to intrude too much into your personal, but the reasons for which you see a psychiatrist, do they prevent you from understanding what's happening right now?

THE DEFENDANT: No.

THE COURT: Do they prevent you from answering my questions honestly and completely?

THE DEFENDANT: No, it wouldn't. It's not.

THE COURT: Does it prevent your ability to remember things clearly?

THE DEFENDANT: No.

THE COURT: OK. Have you taken any mind-altering drugs, medicine, or pills in the last 24 hours?

THE DEFENDANT: No, I didn't.

THE COURT: What about any alcohol, have you had any alcohol in the last 24 hours?

THE DEFENDANT: No.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes, it is.

THE COURT: Do you understand what's going on in this proceeding?

THE DEFENDANT: Yes.

THE COURT: OK. Does the government have any objections to the defendant's competence to enter a guilty plea at this time?

MS. ROTHMAN: No, your Honor.

THE COURT: Does defense counsel have any objection?

MR. HARTMAN: No, your Honor.

THE COURT: I'm going ask you some of the same questions I asked during that initial phase, the arraignment phase. It's going to seem repetitive, but I'm doing it again to protect your rights.

Have you received a copy of the written version of the

charge against you in this case known as the information?

FOREPERSON: Yes, I did.

THE COURT: OK. And have you read it?

THE DEFENDANT: Yes, I did.

THE COURT: And you understand that you have been charged with securities fraud; is that correct?

THE DEFENDANT: Yes.

THE COURT: You have the right to have me read the information to you in open court if you would like, or you can waive that right.

Would you like me to read it to you?

THE DEFENDANT: I can waive that right.

THE COURT: Have you had time to talk to your attorneys about this charge and about how you wish to plead?

THE DEFENDANT: Yes, I did.

THE COURT: Have they told you the consequences of pleading guilty?

THE DEFENDANT: Yes, they did.

THE COURT: Are you satisfied with your attorney's representation of you?

THE DEFENDANT: Yes.

THE COURT: Ms. Güven, I am now going to explain certain Constitutional right that you have. These are rights that you will be giving up by entering a guilty plea. Please listen carefully to what I am about to say, and if you don't

understand something, please stop me, and your attorney or I will explain the matter more fully; OK?

THE DEFENDANT: OK.

THE COURT: Under the Constitution and the laws of the United States, you have the right to plead not guilty to the charges contained in this information.

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: And if you pled not guilty, you would be entitled under the Constitution to a speedy and public trial by a jury of that charge. At that trial, you would be presumed innocent, and the government would be required to prove you guilty beyond a reasonable doubt before you could be found guilty. That means that you would not have to prove that you are innocent, and you would not be convicted unless a jury of 12 people agreed unanimously that you are guilty beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: If you decided to go to trial, at that trial and at every stage of your case, you would have the right to be represented by an attorney. If you could not afford an attorney or if you ran out of money, an attorney would be appointed to represent you at the government's expense and at no cost to you.

When an attorney is appointed, that attorney is appointed to handle your case all the way through trial and not just for the guilty plea, so your decision to plead guilty here today should not depend on whether you can afford to hire an attorney.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: During a trial, the witnesses for the prosecution would have to come to court and testify in your presence, where you could see and hear them, and your lawyer could cross-examine those witnesses. If you wanted, your lawyer could offer evidence on your behalf. You would be able to use the Court's power to compel witnesses to come to court to testify in your defense even if they did not want to come.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: At a trial, you would have the right to testify in your own defense if you wanted to, but you would also have the right not to testify. If you chose not to testify, that could not be used against you in any way. No inference or suggestion of guilt could be made from the fact that you did not testify.

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: If you are convicted at trial, you would

have the right to appeal that verdict to a higher court.

Do you understand that?

THE DEFENDANT: Yeah.

THE COURT: And as I said before, you have the right to plead not guilty. Even right now, even as we sit here today for the purposes of entering a guilty plea, you have the right to change your mind, persist in your not guilty plea, and proceed to trial.

If you do plead guilty and I accept your plea, you will give up a trial and all of the other rights that I have just described. If you plead guilty, there will be no trial. All that will remain to be done will be to impose a sentence. You and the government will have a chance to make arguments about what that sentence should be, but there will not be any further trial to determine whether you are guilty or not guilty of the charge to which you pled guilty.

Do you understand that?

THE DEFENDANT: Yeah, I understand.

THE COURT: Do you understand that the decision as to the appropriate sentence in your case will be entirely up to the sentencing judge, and that that judge will be limited only by what the law requires? They means even if you are surprised or disappointed by your sentence, you will still be bound by your guilty plea.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Finally, if you do plead guilty, you are also giving up your right not to incriminate yourself. I will ask you questions about what you did in order to satisfy myself that you are actually guilty.

THE DEFENDANT: Yeah.

THE COURT: By pleading guilty, you are going to be admitting not just to your legal guilt, but also to your factual guilt.

Do you understand all of that?

THE DEFENDANT: I understand.

THE COURT: OK. You said earlier that you have read the information and you understand that you have been charged with securities fraud. I am now going to ask the Assistant United States Attorney to state the elements of that charge. The elements are the things that the government would have to prove beyond a reasonable doubt if the case were to proceed to trial.

MS. ROTHMAN: Yes, your Honor. If the case had gone to trial, the government would prove the following elements beyond a reasonable doubt:

In connection with an offer or a sale of any security, the defendant did one of the following three things: Employed any device, scheme, or artifice to defraud; make any false statement of a material fact or an omission of a material fact

necessary to make statements that were made not misleading or engaged in any transaction that operates as a fraud or a deceit upon a purchaser; third, the defendant did so knowingly and with the intent to defraud; and, fourth, that the defendant's conduct involved the use of the means or instruments of transportation or communications in interstate commerce or the mails. The government would also prove that venue is proper by a preponderance of the evidence in the Southern District of New York.

THE COURT: Thank you.

Ms. Güven, I am now going to tell you the maximum possible penalties for this crime. The maximum means the most that could possibly be imposed. It does not necessarily mean it is what you will receive, but you have to understand that by pleading guilty here today, you are exposing yourself to any combination of punishments up to the maximum that I am about to describe.

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: OK. First, I'm going to tell you about the possible restrictions on your liberty. In this case, Count One of the information carries a maximum term of imprisonment of five years and a maximum term of supervised release of three years. Supervised release means that if you are sentenced to prison and thereafter released from prison, you

may be subject to supervision by the probation department. If you are placed on supervised release and thereafter violate any of the conditions of that release, the Court can revoke your term of supervised release and return you to prison without giving you any credit for the time that you served while out on supervised release.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Second, in addition to these restrictions on your liberty, the maximum possible punishment also includes certain financial penalties. The maximum allowable fine in this case is the greatest of $250,000, or twice what was made by the criminal activity, or twice what someone other than yourself lost because of the criminal activity. In addition, there is a mandatory special assessment of $100 that must be imposed for the count of conviction.

Has anyone threatened you or coerced you in any way to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone other than the prosecution, and solely by way of the written plea agreement, offered you anything or promised you anything to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: OK. And as I just referenced, there is an agreement between you and the government concerning this plea;

is that correct?

THE DEFENDANT: Yes.

THE COURT: And have you received a copy of that agreement?

THE DEFENDANT: Yes.

THE COURT: And have you read it?

THE DEFENDANT: Yes.

THE COURT: And have you had an opportunity to discuss it with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Is that your signature here on the back page?

THE DEFENDANT: Yeah.

THE COURT: OK. Did you read it and discuss it with your lawyer before you signed it?

THE DEFENDANT: Mm-hmm.

THE COURT: I want to go over some of the important provisions in this agreement. First, with respect to sentencing, you and the government have agreed as to the appropriate calculation for your sentence under the sentencing guidelines and have stipulated to a guidelines range of between 37 and 46 months' imprisonment; is that correct?

THE DEFENDANT: Yeah.

THE COURT: And in this agreement, you agree that neither party will seek any departure or adjustment pursuant to

the guidelines but that either party may seek a sentence that is outside of the stipulated guidelines range based on the factors that are found in our sentencing statute, which you can find at Title 18 of the United States Code, Section 3553(a).

Do you understand all of that?

THE DEFENDANT: Yes, I do.

THE COURT: OK. In addition, you and the government have stipulated to a fine range of between $15,000, and $150,000.

Do you understand that.

THE DEFENDANT: I do.

THE COURT: All right. In addition in this agreement, you have agreed that you will not contest at sentencing the facts that are set forth in paragraphs 1 through 16 in the superseding-2 indictment, the S2 superseding indictment, I should say, which is attached to this plea agreement, and that you agree and stipulate that this conduct constitutes information that may be used in imposing a sentence.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: OK. You have also admitted to the forfeiture allegation with respect to Count One of the information, and you have agreed to forfeit to the United States $6,717,998, as well as all right, title, and interest in the following specific property: All moneys, assets, and funds

contained in Mercury Technologies Inc. accounts 202217285146 and 8IS-06631-12 RR ZXB.

Do you understand that you have agreed to forfeit both the sum of money as well as those specific properties?

THE DEFENDANT: Yes, I do.

THE COURT: OK. And you are consenting to the entry of the consent order of forfeiture, which was attached also this plea agreement, and agree that that consent order of forfeiture will be final when it is ordered by the Court.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: OK. You have also agreed to make restitution in the amount of $6,717,998; is that correct?

THE DEFENDANT: Yes.

THE COURT: OK. In this agreement, you have limited, in certain respects, your ability to appeal from your conviction and sentence. In particular, you have agreed that you will not file a direct appeal or bring a collateral challenge, sometimes called a habeas motion, to challenge your conviction; you waive your right to challenge your conviction based on any non-jurisdictional defects in the proceedings before you entered a guilty plea; to any claim that the statute to which you are pleading guilty is unconstitutional; and any claim that the admitted conduct does not fall within the scope of the statute.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: You have also agreed that you will not file a direct appeal or bring any collateral challenge or habeas motion to any sentence that is within or below the stipulated guidelines range of 37 to 46 months' imprisonment.

Do you understand that?

FOREPERSON: Yes, I do.

THE COURT: You will not appeal or bring any collateral challenge to any term of supervised release that is less than or equal to the statutory maximum of three years.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You've agreed that you will not appeal or bring any challenge to any forfeiture amount that is less than or equal to $6,717,998, and you will not bring any appeal or collateral challenge to any restitution amount that is less than or equal to that same amount.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In addition, this agreement has very specific terms with respect to your immigration status. I want to make you understand that.

THE DEFENDANT: Yes.

THE COURT: As we discussed previously, your guilty

plea makes it very likely that your removal from the United States is presumptively mandatory and that, at a minimum, you risk being removed or suffering other immigration consequences.

You understand that; correct?

THE DEFENDANT: Yes.

THE COURT: And you agree that you want to plead guilty regardless of those immigration consequences and regardless of possible removal from the United States; is that correct?

THE DEFENDANT: Yes, I do.

THE COURT: OK. Do you understand that you will have no right to withdraw your guilty plea based on any actual or perceived immigration consequences, including removal, that may result from your guilty plea.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you agree that you will not challenge your conviction or your sentence on direct appeal or through any collateral challenge such as a habeas motion on the basis of those possible immigration consequences.

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: OK. This provision also provides that you agree -- I am going to read what it says. I'm not sure I actually understand it. You agree to cause Kalder to withdraw,

revoke, or terminate her O1A petition at the time of sentencing and to the entry of a stipulated judicial order of removal.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: OK.

MR. HARTMAN: Your Honor, I will just note that with respect to the visa application, that's already been withdrawn.

THE COURT: That's already been withdrawn. Thank you.

This plea agreement further provides that, having consulted with a lawyer and understanding your legal consequences, you are waiving your right to the notice and hearing provided for under Title 8 of the United States Code, Section 1228(c)(2), and you waive any and all rights to appeal, reopen, reconsider, or otherwise challenge a judicial order of removal.

Do you understand that?

THE DEFENDANT: Yeah, I understand.

THE COURT: OK. It provides that you agree to the request that an order be issued by the Court for your removal to Turkey, and you agree to accept a written judicial order of removal as the final disposition of the proceedings, and you waive any right to challenge any provision of this agreement in any United States Court or tribunal.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you understand that that order of removal will render you immediately excludable from and inadmissible to the United States for a period of 20 years.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Earlier, in that allocution, I talked to you about sentencing and the stipulated guidelines range and the stipulated fine range. I want to make sure that you understand that that provision is not binding on the sentencing Judge and that the sentencing Judge can reject the calculations under the sentencing guidelines and impose a more severe punishment without allowing you to withdraw your guilty plea.

Do you understand that?

THE DEFENDANT: I do.

THE COURT: OK. The sentencing Judge is required to make his own independent calculation under the sentencing guidelines and then impose a sentence based on what he believes is the appropriate sentence for you even if it is different than the one in this agreement.

Do you understand that?

THE DEFENDANT: Yeah.

THE COURT: In determining that sentence, the Court will consider, in addition to the guidelines and any departures from those guidelines, all of the factors that are set forth in the sentencing statute, which I referenced earlier and you can

find at Title 18 of the United States Code, Section 3553(a). Those factors include the nature and circumstances of the offense and the history and characteristics of you, the defendant, the need for the sentence imposed, the kinds of sentences that are available, the sentencing range provided under the guidelines, the need to avoid sentencing disparities, and the need to provide restitution to victims.

In addition, the Court will consider a presentence report, which is prepared by the probation department in advance of your sentencing. Before you are sentenced, you and the government will have an opportunity to challenge the facts that are reported by the probation officer.

Ms. Güven, now that you have been advised of the charge against you, the possible penalties that you face, and the rights that you are giving up, is it still your intention to plead guilty to Count One of the information?

THE DEFENDANT: Yes.

THE COURT: So with respect to Count One of the information, how do you plead?

THE DEFENDANT: I plead guilty.

THE COURT: Can you tell me in your own words what you did to make you believe that you are guilty of that offense?

THE DEFENDANT: OK. Between 2024 and 2025, as the founder and chief executive officer of Kalder, a technology company headquartered in Manhattan, I raised seed round

investment for Kalder. In some of these calls and e-mails, I made statements about Kalder's annual recuring revenue and about the status of certain brand partnerships that I knew at the time I made them were not accurate. I knew what I was doing was wrong, and I am deeply sorry.

THE COURT: Thank you.

Are there questions you would like me to ask Ms. Güven?

MS. ROTHMAN: Your Honor, only that Ms. Güven understood that in connection with those false statements, the investors who gave money would receive equity in Kalder Security.

THE DEFENDANT: Yes. I understand, yes, and I did give equity.

THE COURT: Thank you.

Anything further?

MS. ROTHMAN: Nothing else.

THE COURT: Do you think that's a sufficient predicate for the guilty plea?

MS. ROTHMAN: Yes, your Honor.

THE COURT: And does the government represent that it has sufficient evidence to find the defendant guilty at trial?

MS. ROTHMAN: Yes, your Honor.

THE COURT: Do you want to proffer that evidence?

MS. ROTHMAN: Yes, your Honor. If this case had gone

to trial, the government would have offered the following evidence, among other things, to prove the defendant's guilt:

We would offer testimony from investors that received the false statements from the defendant; extensive corporate records, including financial statements of Kalder, both accurate statements prepared by a third party accounting firm and fraudulent statements that the defendant prepared and circulated to investors; we'd offer capitalization tables reflecting the equity in the business; and we'd offer at least one forged contract of a brand partner that the defendant prepared, again, among other evidence.

THE COURT: Thank you.

Ms. Güven, on the basis of your responses to my questions and my observation of your demeanor, I find that you are competent to enter a guilty plea. I am satisfied that you understand your rights, including your right to have your case considered by the grand jury and your right to go to trial; that you are aware of the consequence of your plea, including the sentence that may be imposed and the immigration consequences that will follow; that you are voluntarily pleading guilty; and that you have admitted that you are guilty as charged in Count One of the information.

For these reasons, I will recommend to District Judge Kaplan that I accept your plea of guilty as to Count One of the information. I will direct the government to order a

copy of the transcript and submit it to Judge Kaplan so that he may act on my recommendation.

Has he set a sentencing date yet?

MS. ROTHMAN: Your Honor, the Court has proposed three dates. We'd like to have sentencing on September 17 at 11:00 a.m., and the Court has asked that your Honor order that as a firm date and not a control date.

THE COURT: OK. So sentencing will be set for September 17. I will direct that the presentence report be prepared.

Can you deliver a case summary to probation within the next 14 days?

MS. ROTHMAN: Yes, your Honor.

THE COURT: Counsel, can you and your client be available to be interviewed by probation in the next 14 days?

MR. HARTMAN: Yes, your Honor.

THE COURT: Thank you.

MR. HARTMAN: Your Honor, can I put one more thing on the record?

THE COURT: Sure.

MR. HARTMAN: I have discussed this with Ms. Rothman before the proceeding. We intend to ask Judge Kaplan to enter the consent preliminary order of forfeiture as soon as possible so that the government can begin the process of forfeiting the funds in those accounts and, ideally, complete it before the

sentencing.

THE COURT: Understood.

MR. HARTMAN: I understand there's no agreement on that, but we are going to make that request.

THE COURT: Understood. Thank you.

Any objection to the defendant's continued bail?

MS. ROTHMAN: No, your Honor.

THE COURT: OK. Ms. Güven, you will remain under the bail conditions that were set previously. All of those conditions remain, and if you violate any of those conditions, you may face serious consequences, including revocation of bail and prosecution for bail jumping.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: In addition, if you commit an offense while you are released, you may be subject to a more severe punishment. And, of course, if you commit an offense, you may be subject to having the government revoke the terms set forth if this plea agreement.

Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: Anything further from the government?

MS. ROTHMAN: No, your Honor. Thank you.

THE COURT: Anything further from defense?

MR. HARTMAN: No. Thank you, Judge.

THE COURT: Thank you to the family. We are adjourned.

(Adjourned)